**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────

LONI S.,

                                Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.

No. 3:22-CV-805
(CFH)

─────────────────────────────

**APPEARANCES:**

Lachman, Gorton Law Firm
P.O. Box 89
1500 East Main Street
Endicott, New York 13761
Attorney for plaintiff

Social Security Administration
6401 Security Boulevard
Baltimore, Maryland 21235
Attorney for defendant

**OF COUNSEL:**

PETER A. GORTON, ESQ.

HUGH DUN RAPPAPORT, ESQ.

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER[1]

      Loni S.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security ("the Commissioner")

denying her applications for disability insurance and supplemental security income

─────────────────────

[1] Parties consented to direct review of this matter by a magistrate judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, L.R. 72.2(b), and General Order 18. See Dkt. No. 7.
[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff's last name by initial only.

benefits.  <u>See</u> Dkt. No. 1 ("Compl.").  Plaintiff moves for judgment on the pleadings and for the Commissioner's decision to "be remanded for the calculation of benefits, or alternatively, remanded for further administrative proceedings."  Dkt. No. 9 at 19.[3]  The Commissioner also moves for judgment on the pleadings.  <u>See</u> Dkt. No. 14.  Plaintiff replies.  <u>See</u> Dkt. No. 15.  For the following reasons, plaintiff's motion is granted, the Commissioner's motion is denied, and the Commissioner's decision is reversed and remanded for further proceedings.

## I. Background

On June 9, 2020, plaintiff filed Title II and Title XVI applications for disability insurance and supplemental security income benefits.  <u>See</u> T. at 13, 197-210.[4]  Plaintiff alleged a disability onset date of January 1, 2018.  <u>See</u> <u>id.</u> at 197, 204.  The Social Security Administration ("SSA") denied plaintiff's claims on October 14, 2020.  <u>See</u> <u>id.</u> at 102.  Plaintiff sought reconsideration, <u>see</u> <u>id.</u> at 107, and her claims were again denied on April 5, 2021.  <u>See</u> <u>id.</u> at 13, 73-99.  Plaintiff requested a hearing, <u>see</u> <u>id.</u> at 130, and a hearing was held before Administrative Law Judge ("ALJ") Jeremy G. Eldred on October 8, 2021.  <u>See</u> <u>id.</u> at 26-54.  On October 28, 2021, the ALJ issued an unfavorable decision.  <u>See</u> <u>id.</u> at 13-20.  On June 30, 2022, the Appeals Council denied plaintiff's request for review of the ALJ's decision.  <u>See</u> <u>id.</u> at 1-5.  Plaintiff timely brought this action before the Court.  <u>See</u> Dkt. No. 1.

---

[3] Citations to the parties' briefs refer to the pagination generated in the header of each page by CM/ECF.
[4] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. <u>See</u> Dkt. No. 8.  Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page, not the pagination generated by CM/ECF.

## II. Legal Standards

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 985-86 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).  The substantial evidence standard is "a very deferential standard of review . . . .  [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citation, emphasis, and internal quotations marks omitted).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986).  However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's

independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

## B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1)(E).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  Id. § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  See id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which

4

significantly limits his [or her] physical or mental ability to do basic work activities.

If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." Barnhart v. Thomas, 540 U.S. 20, 24 (2003). The plaintiff bears the initial burden of proof to establish each of the first four steps. See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. (citing Berry, 675 F.2d at 467).

### III. The ALJ's Five Step Disability Evaluation

Applying the five-step disability sequential evaluation, the ALJ first determined that plaintiff met "the insured status requirements of the Social Security Act through

December 31, 2019[,]" and had "not engage[d] in substantial gainful activity since January 2, 2018, the alleged onset date of disability[.]"  T. at 15.  At step two, the ALJ determined that plaintiff had

> the following medically determinable impairments: ulcerative colitis, irritable bowel syndrome [("IBS")], chronic obstructive pulmonary disease, a closed fracture of the right clavicle, gastroesophageal reflux disease [("GERD")], atrophy of the kidney, kidney stones, a history of sepsis, hypertension, hyperlipidemia, attention deficit hyperactivity disorder [("ADHD")], major depressive disorder, generalized anxiety disorder with panic attacks, and opioid use disorder in remission[.]

Id. at 15-16.  ALJ Eldred concluded that none of plaintiff's impairments, singularly or in combination, were "severe."  Id. at 16.  Thus, the ALJ determined that plaintiff had "not been under a disability, as defined in the Social Security Act, from January 1, 2018[,] through the date of th[e] decision[.]"  Id. at 20.

## IV.  Discussion[5]

Plaintiff argues that the ALJ erred in his severity determination at step two of the sequential evaluation.  See generally Dkt. No. 9.  Specifically, plaintiff argues (1) the ALJ committed legal error by finding the state agency medical consultants' opinions persuasive; and (2) substantial evidence does not support the ALJ's conclusion concerning the severity of plaintiff's physical and mental impairments.  See id.; see also Dkt. No. 15.  The Commissioner argues that ALJ Eldred did not commit legal error and

---

[5] The relevant regulations pertaining to plaintiff's applications for Title II and Title XVI benefits are virtually identical.  See 20 C.F.R. pt. 416 et seq; 20 C.F.R pt. 404 et seq.  As the parties cite the regulations for Title XVI claims, the Court will do the same.  See Dkt. No. 9 at 9; see also Dkt. No. 14 at 3, n.2.  The Court will not cite the parallel Title II regulations.

that his step-two severity determination is supported by substantial evidence.  See

generally Dkt. No. 14.

### A. Whether the ALJ Legally Erred by Finding the State Agency Consultants'
### Opinions to be Persuasive

The ALJ's discussion of the non-examining state agency consultants' medical

opinions is as follows:

> Regarding the medical opinion evidence, State agency medical consultants concluded that [plaintiff] has not established a 'severe' physical or mental impairment[.] These opinions are persuasive because they are all well supported by a narrative rationale, and these rationales cite supporting objective medical evidence from the record.  I also find all of these opinions consistent with the record as a whole, including the detailed evidence I discussed above to support my conclusion that [plaintiff] does not have a 'severe' impairment.

T. at 19 (citing T. at 55-70, 73-99).

Plaintiff argues that the ALJ erred in determining that the opinions were

persuasive because "statements about whether or not you have a severe

impairment(s)" constitute "statement[s] on issues reserved to the Commissioner" which

is "[e]vidence that is inherently neither valuable nor persuasive[.]"  Dkt. No. 9 at 9

(citations omitted).  The Commissioner cites the SSA's Program Operations Manual

System ("POMS"), which "defines a statement on an issue 'reserved to the

Commissioner' as 'a statement made by a [person] who is not part of the adjudicative

team that would direct' the disability determinations at the initial and reconsideration

levels."  Dkt. No. 14 at 4 (alteration in original) (quoting POMS DI 24503.040(A),

Evaluating a Statement on an Issue Reserved to the Commissioner,

https://secure.ssa.gov/poms.nsf/lnx/0424503040 (last visited June 21, 2023).  The

Commissioner asserts that because the state agency consultants are members of the

7

adjudicative team, their opinions do not constitute "statements on issues reserved to the Commissioner." Id. at 4-5.  The Commissioner also asserts that 20 C.F.R. § 416.913(a)(5)(i) contemplates that state agency consultants will determine the severity of a plaintiff's impairments, and that 20 C.F.R. § 416.920c requires an ALJ to consider the persuasiveness of those opinions.  See id. at 5.  Thus, the Commissioner contends that the ALJ did not err in finding the opinions persuasive.  See id.

In her reply, plaintiff argues, in part, that the Court should not adopt the Commissioner's interpretation of the regulations because the POMS has no legal force, and is inconsistent with the regulations.  See Dkt. No. 15 at 6.

### 1. Relevant Regulations and SSA Guidance

20 C.F.R. § 416.913(a), in relevant part, states, "evidence is anything you or anyone else submits to us or that we obtain that relates to your claim.  We consider evidence under §§ 416.920b, 416.920c . . . .  We evaluate evidence we receive according to the rules pertaining to the relevant category of evidence."  20 C.F.R. § 416.913(a)(5) defines "prior administrative medical finding" as

> a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record, such as:
>
> (i) The existence and severity of your impairment(s);
>
> (ii) The existence and severity of your symptoms;
>
> (iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1;
>
> (iv) If you are a child, statements about whether your impairment(s) functionally equals the listings in Part 404, Subpart P, Appendix 1;

(v) If you are an adult, your residual functional capacity;

(vi) Whether your impairment(s) meets the duration requirement; and

(vii) How failure to follow prescribed treatment (see § 416.930) and drug addiction and alcoholism (see § 416.935) relate to your claim.

20 C.F.R. § 416.913(a)(5) (emphasis added).[6]

20 C.F.R. § 416.913a states

[a]dministrative law judges are responsible for reviewing the evidence and making administrative findings of fact and conclusions of law.  They will consider prior administrative medical findings and medical evidence from our Federal or State agency medical or psychological consultants as follows: (1) Administrative law judges are not required to adopt any prior administrative medical findings, but they must consider this evidence according to §§ 416.920b, 416.920c, and 416.927, as appropriate, because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation.

20 C.F.R. § 416.913a(b)(1) (emphasis added).  20 C.F.R. § 416.920b explains that the

following "evidence" "is inherently neither valuable nor persuasive to the issue of

whether you are disabled or blind under the Act," and the ALJ "will not provide any

analysis about how we considered such evidence in our determination or decision, even

under § 416.920c:"

(1) Decisions by other governmental agencies and nongovernmental entities. See § 416.904.

(2) Disability examiner findings.  Findings made by a State agency disability examiner made at a previous level of adjudication about a medical issue, vocational issue, or the ultimate determination about whether you are disabled.[7]

---

[6] Both parties agree that the state agency consultants' opinions at issue in this case constitute "prior administrative medical findings."  See Dkt. No. 9 at 9; see also Dkt. No. 14 at 4.

[7] In her brief, the Commissioner distinguishes examiners from consultants.  See Dkt. No. 14 at 5-6 (quoting 20 C.F.R. § 416.920b(c)(2); citing POMS DI 24501.001, The Disability Determination Services Disability Examiner, Medical Consultant, and Psychological Consultant Team, and the Role of the Medical Advisor, https://secure.ssa.gov/poms.nsf/lnx/0424501001 (last visited June 21, 2023)).  It is unclear to the Court why the Commissioner makes this distinction because plaintiff does not argue that

(3) Statements on issues reserved to the Commissioner.  The statements listed in paragraphs (c)(3)(i) through (c)(3)(ix) of this section would direct our determination or decision that you are or are not disabled or blind within the meaning of the Act, but we are responsible for making the determination or decision about whether you are disabled or blind:

> (i) Statements that you are or are not disabled, blind, able to work, or able to perform regular or continuing work;[8]
>
> (ii) Statements about whether or not you have a severe impairment(s);
>
> (iii) Statements about whether or not your impairment(s) meets the duration requirement (see § 416.909);
>
> (iv) Statements about whether or not your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1; . . . .

20 C.F.R. § 416.920b(c) (emphasis added).  "Commissioner" is defined as "the

Commissioner of Social Security or his or her authorized designee."  20 C.F.R.

§ 416.902(d).  "A medical or psychological consultant designated by the Commissioner

includes any medical or psychological consultant employed or engaged to make

medical judgments by the Social Security Administration . . . ."  20 C.F.R. § 416.926(d).

Finally, 20 C.F.R. § 419.920c then directs how an ALJ must consider medical

opinions and prior administrative medical findings—by evaluating their persuasiveness.

Specifically, the regulation states that the ALJ "will articulate in [a] determination or

decision how persuasive we find all of the medical opinions and all of the prior

administrative medical findings in your case record."  20 C.F.R. § 416.920c(b).

---

the ALJ improperly concluded that the opinions were "persuasive" under 20 C.F.R. § 416.920b(c)(2), but rather under § 416.920b(c)(3).  See Dkt. No. 9 at 9.

[8] In her brief, the Commissioner distinguishes the severity determination and the ultimate disability determination.  See Dkt. No. 14 at 5 (citing 20 C.F.R. §§ 416.913a(5)(i), 416.913a(b)(1), 416.920c(a)-(b)).  Plaintiff does not argue that the ALJ erred by adopting the state agency consultants' ultimate disability determinations.  See Dkt. No. 9 at 8-10.

The POMS is "the publicly available operating instructions for processing Social Security claims."  Washington State Dep't of Soc. & Health Servs. v. Guardianship Est. of Keffeler, 537 U.S. 371, 385 (2003).  The POMS explain, "[a] statement on an issue reserved to the Commissioner is a statement made by a medical source or a nonmedical source who is not part of the adjudicative team that would direct our determination or decision that the claimant is or is not disabled or blind within the meaning of the Social Security Act."  POMS DI 24503.040(A), Evaluating a Statement on an Issue Reserved to the Commissioner, https://secure.ssa.gov/poms.nsf/lnx/0424503040 (last visited June 21, 2023) (emphasis added).  The "adjudicative team" consists of the disability examiner, medical consultant, and psychological consultant who make the initial and reconsideration disability determinations.  See POMS DI 24501.001(A), The Disability Determination Services Disability Examiner, Medical Consultant, and Psychological Consultant Team, and the Role of the Medical Advisor, https://secure.ssa.gov/poms.nsf/lnx/0424501001 (last visited June 21, 2023).

Social Security Ruling ("SSR") 96-6p clarified that "[f]indings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review."  SSR 96-6P, Titles II & Xvi: Consideration of Admin. Findings of Fact by State Agency Med. & Psychological Consultants & Other Program Physicians & Psychologists at the Admin. L. Judge & Appeals Council, 1996 WL 374180, at *1 (S.S.A. July 2, 1996) (emphasis added).

However, SSR 96-6p was rescinded and replaced by SSR 17-2p.  See Bradley W. v. Comm'r of Soc. Sec., No. 5:19-CV-1217 (ATB), 2020 WL 5848833, at *7 (N.D.N.Y. Oct. 1, 2020).  SSR 17-2p does not reiterate the aforementioned statements made in SSR 96-6p, nor does it discuss state agency consultants' determinations on the severity of an individual's impairments.  See SSR 17-2p, Titles II & Xvi: Evidence Needed by Adjudicators at the Hearings & Appeals Council Levels of the Admin. Rev. Process to Make Findings About Med. Equivalence, 2017 WL 3928306, at *3 (S.S.A. Mar. 27, 2017).  Rather, SSR 17-2p focuses on the step-three "equivalence" determination concerning whether a plaintiff's impairments meet or medically equal a Listing.  See id. In relevant part, the Ruling states,

> [w]hen an [medical consultant] [("MC")] or [psychological consultant] [("PC")] makes administrative medical findings at the initial or reconsideration levels, the findings are part of the Commissioner's determination; therefore, they are not evidence at that level of adjudication. At subsequent levels of the administrative review process, the MCs' or PCs' administrative medical findings made at the initial or reconsideration levels are prior administrative medical findings, which are evidence.  Although adjudicators at the hearings and AC levels are not required to adopt prior administrative medical findings when issuing decisions, adjudicators must consider them and articulate how they considered them in the decision.

Id. (footnotes omitted) (emphasis added).

In 2017, in addressing "Revisions to Rules Regarding the Evaluation of Medical Evidence," a "commentor asserted that allowing administrative law judges (ALJ) to consider prior administrative medical findings means that individuals at the hearings level do not get a new and independent review of their claims."  82 FR 5844-01, 2017 WL 168819, at *5852 (Jan. 18, 2017).  "Another commenter raised concern that requiring State agency adjudicators to provide written analysis about the persuasiveness of the prior administrative medical findings from the initial level of

12

review appeared to conflict with the principles of getting a new and independent review."

Id.  The SSA responded,

> We did not make any specific changes based on these comments.  A new decision means that adjudicators at subsequent levels of the administrative review process (i.e., reconsideration, hearing, and AC) do not need to defer to the findings or conclusions of prior adjudicators.  Instead, they make new findings and conclusions.  Currently, <u>adjudicators at all levels of the administrative review process consider prior administrative medical findings as part of conducting a new and independent review when they issue a determination or decision</u>.  Based on our experience administering our programs, we have found that our adjudicators reasonably consider prior administrative medical findings as part of the evidence in the claim and do not automatically favor or disfavor this evidence simply because the medical source is a medical consultant (MC) or a psychological consultant (PC).
>
> Id. (footnote omitted) (emphasis added).

## 2.  Analysis

The Commissioner asserts that "it is entirely unsurprising that [p]laintiff has failed to cite any case where any court in any jurisdiction has ever endorsed her view that—'as a matter of law'—ALJs are 'not permitted to rely on" state agency consultants' opinions. Dkt. No. 14 at 6.  This is because "in the overwhelming majority of Social Security cases appealed to federal court, the ALJs placed at least some reliance on" state agency consultants' opinions.  Id.  The Court agrees with the general proposition that ALJs almost always rely, to some degree, on state agency consultants' opinions.  However, plaintiff's argument is not that the ALJ could not rely on any portion of the consultants' opinions; rather, that the ALJ erred in relying on the consultants' severity conclusion.  See Dkt. No. 15 at 5.  Insofar as the Commissioner faults plaintiff for not citing cases that support her interpretation of the regulation, the Commissioner did not cite a single case in support of her interpretation of the relevant regulation.  See Dkt.

No. 14 at 3-6.  Following reasoned research, the Court was unable to find a single case addressing the precise issue plaintiff presents.

In her reply, plaintiff cites two cases concerning state agency consultants' findings to support her interpretation of the regulations.  See Dkt. No. 15 at 5-6 (citing Landess v. Kijakazi, No. 4:21-CV-38 (DCP), 2022 WL 4474894, at *12 (E.D. Tenn. Sept. 26, 2022); Herman v. Kijakazi, No. 3:22-CV-138 (CWR/MTP), 2023 WL 2565180, at *5 (S.D. Miss. Jan. 23, 2023), report and recommendation adopted, 2023 WL 2563233 (S.D. Miss. Mar. 17, 2023)).

In both cases, the plaintiffs argued that the ALJ erred by not giving greater weight to the state agency consultants' findings that the plaintiff had a severe impairment(s).  See Landess, 2022 WL 4474894, at *12; see also Herman, 2023 WL 2565180, at *5.  The Landess court concluded that the ALJ did not err because "[a] finding of severe impairment is an issue reserved specifically to the Commissioner."  Landess, 2022 WL 4474894, at *12 (citing 20 C.F.R. §§ 404.1520b(c)(3)(ii), 416.920b(c)(3)(ii)).  The Herman court concluded that "the social security regulations are clear that . . . '[f]indings made by a State agency disability examiner made at a previous level of adjudication about a medical issue, vocational issue, or the ultimate determination about whether you are disabled' is 'inherently neither valuable nor persuasive.'"  Herman, 2023 WL 2565180, at *5 (quoting 20 C.F.R. §§ 404.1520b(c)(1)-(3)).

Neither case discussed the POMS and its impact on the regulations.  See Landess, 2022 WL 4474894, at *12; see also Herman, 2023 WL 2565180, at *5.  Additionally, Herman relies on the statutory provision concerning "disability examiner[s]" but consultants are not necessarily examiners.  See Herman, 2023 WL 2565180, at *5;

see also 20 C.F.R. § 416.913a(a) ("In claims adjudicated by the State agency, a State agency medical or psychological consultant may make the determination of disability together with a State agency disability examiner or provide medical evidence to a State agency disability examiner when the disability examiner makes the initial or reconsideration determination alone . . . ."). Here, plaintiff does not challenge the conclusions of a state agency disability examiner, but "the non-examining state agency consultants." Dkt. No. 9 at 8; see, e.g., T. at 70 (listing S. Sonthineni, M.D., as the "MC/PC" and D. Doty as the "Disability Adjudicator/Examiner). Further, insofar as plaintiff cites Joshua B. R. v. Kijakazi, No. 20-CV-00678 (SH), 2022 WL 852863, at *4 (N.D. Okla. Mar. 22, 2022), which concluded that a consultative examiner's severity opinion was inherently neither valuable or persuasive, it does not concern a non-examining state agency consultant or consider application of the POMS. See Dkt. No. 15 at 6 (citing Richard B. v. Kijakazi, No. 1:21-CV-00972 (JEM), 2022 WL 16709174, at *11-12 (N.D. Ga. Sept. 19, 2022) (considering a treating provider's statement on issues reversed to the Commissioner). As such, the cases that plaintiff cites are not instructive to the Court's determination about whether the state agency consultants' severity findings constitute statements on issues reserved to the Commissioner that are inherently neither valuable nor persuasive. As the Court has been unable to locate another case on point, it will turn to statutory interpretation.

### a. Statutory Interpretation

"When reviewing an agency's legal determination or interpretation of a statute that it is authorized to administer, courts often accord some deference." Linza v. Saul, 990 F.3d 243, 247 (2d Cir. 2021) (citing Chevron, U.S.A., Inc. v. Nat. Res. Def. Council,

Inc., 467 U.S. 837, 844 (1984)).  "[W]here [a] challenge to agency action disputes the agency's interpretation of a statute that Congress has designated for administration by the agency, [the Court] appl[ies] the analytical framework articulated in *Chevron*, 467 U.S. at 843-44, to determine whether and, if so, how much to defer to the agency's interpretation."  Aleutian Cap. Partners, LLC v. Scalia, 975 F.3d 220, 229-30 (2d Cir. 2020).  If an agency interpretation does "does not qualify for *Chevron* deference [it] is still entitled to 'respect according to its persuasiveness,' as evidenced by 'the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade[.]'"  Est. of Landers v. Leavitt, 545 F.3d 98, 107 (2d Cir. 2008) (quoting United States v. Mead Corp., 533 U.S. 218, 226-27 (2001)).  This is known as Skidmore deference.  See Skidmore v. Swift & Co., 323 U.S. 134 (1944); see also Catskill Mountains Chapter of Trout Unlimited, Inc. v. Env't Prot. Agency, 846 F.3d 492, 509 (2d Cir. 2017) (citations omitted) (explaining that the approach behind Skidmore deference "'has produced a spectrum of judicial responses, from great respect at one end, to near indifference at the other.'").

The Second Circuit has not directly addressed whether the SSA's POMS is entitled to Chevron or Skidmore deference.  However, the Second Circuit has concluded that the Center for Medicare and Medicaid Services' Policy Manual would not be accorded Chevron deference because "[m]ost agency interpretations that have qualified for *Chevron* deference are rules that have been promulgated in regulations issued through notice and comment or adjudication, or in another format authorized by Congress for use in issuing legislative rules."  Est. of Landers, 545 F.3d at 106

(quotation marks omitted) (quoting Cmty. Health Ctr. v. Wilson-Coker, 311 F.3d 132, 138 (2d Cir. 2002)), as revised (Jan. 15, 2009).  The Court explained, "[a]lthough nonlegislative rules are not per se ineligible for *Chevron* deference as a general matter, we are aware of few, if any, instances in which an agency manual, in particular, has been accorded *Chevron* deference."  Id. (footnote omitted).  "Indeed, we have remarked that *Christensen v. Harris County*, 529 U.S. 576 (2000), made clear that interpretations contained in policy statements, agency manuals and enforcement guidelines . . . do not warrant *Chevron* style deference."  Id. (quotation marks omitted) (quoting De La Mota v. U.S. Dep't of Educ., 412 F.3d 71, 79 (2d Cir. 2005)).  But see Raymond v. Barnhart, 214 F. Supp. 2d 188, 191 (D.N.H. 2002) (citations omitted) (applying Chevron deference to the POMS).

In addressing the POMS directly, the Second Circuit has enunciated that "[t]he POMS is a set of guidelines through which the Social Security Administration 'further construe[s]' the statutes governing its operations."  Lopes v. Dep't of Soc. Servs., 696 F.3d 180, 186 (2d Cir. 2012) (quoting Clark v. Astrue, 602 F.3d 140, 144 (2d Cir. 2010)). "The POMS guidelines ha[v]e no legal force, [] [they] do[] not bind the [Commissioner][,]" Tejada v. Apfel, 167 F.3d 770, 775 (2d Cir. 1999) (citations omitted), and they do not "create any judicially-enforceable rights."  Amanda S. v. Kijakazi, No. 3:21-CV-240 (DJS), 2022 WL 4104008, at *5 (N.D.N.Y. Sept. 8, 2022) (citing Sassower v. Berryhill, 17-CV-8257 (MSR/JCM) 2018 WL 7968910, at *4 n.5 (S.D.N.Y. Dec. 13, 2018)).  However, "POMS guidelines are entitled to 'substantial deference, and will not be disturbed as long as they are reasonable and consistent with the statute.'"  Lopes, 696 F.3d at 186 (quoting Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998)).  The

POMS should not be shown deference if "the plain language of the statute and its implementing regulation do not permit the construction contained within the manuals." Id. (quoting Oteze Fowlkes v. Adamec, 432 F.3d 90, 96 (2d Cir. 2005) (declining to defer to the POMS because "[t]he Commissioner's current interpretation is not a permissible construction of either the statute or the regulation . . . ."); see also Simonsen v. Bremby, 679 F. App'x 57, 60 (2d Cir. 2017) (summary order) (relying on the POMS because the "POMS interpretations are not inconsistent with" the regulation).

Here, neither party discussed Chevron, Skidmore, or any other kind of deference to the POMS.  See generally Dkt. Nos. 9, 14, 15.  As the Second Circuit's guidance promulgates the contention "that agency manuals, as a class, are generally ineligible for *Chevron* deference," and the POMS is the SSA's operations manual, the Court will not accord the POMS Chevron deference.  Est. of Landers, 545 F.3d at 106.  Further, as the Second Circuit has not instructed courts to apply Skidmore deference to the POMS, but to give "substantial deference" to the POMS "as long as they are reasonable and consistent with the statute[,]" the Court will not apply Skidmore deference and will follow Lopes' guidance on "substantial deference."  Lopes, 696 F.3d at 186; see also Washington State Dep't of Soc. & Health Servs. v. Guardianship Est. of Keffeler, 537 U.S. 371, 387-88 (2003) (citing Auer v. Robbins, 519 U.S. 452, 461 (1997) (citations omitted) ("Because the salary-basis test is a creature of the Secretary's own regulations, his interpretation of it is, under our jurisprudence, controlling unless plainly erroneous or inconsistent with the regulation.")) (remanding the lower court's decision in part because "the Commissioner's interpretation of her own regulations [in the POMS] is

18

eminently sensible and should have been given deference under <u>Auer</u>, 519 U.S. at 461[.]").

Finally, the Court notes that a basic tenet of statutory interpretation is that "courts should not examine 'a particular statutory provision in isolation,' but rather should read the words in 'context and with a view to their place in the overall statutory scheme' and 'fit, if possible, all parts into an harmonious whole.'" <u>Linza</u>, 990 F.3d at 248 (quoting <u>FDA v. Brown & Williamson Tobacco Corp.</u>, 529 U.S. 120, 132-33 (2000)).

### b.  Application

In reviewing the relevant regulations, SSRs, POMS, and the SSA's comments on its own revisions and recissions, the Court concludes that the POMS are not inconsistent with the regulatory provision at issue and the Court will defer to the POMS. In doing so, the Court concludes that the ALJ did not legally err in finding the state agency consultants' opinions to be persuasive.

Plaintiff relies on 20 C.F.R. § 416.920b(c)(3) which sets forth that a statement about whether a claimant has a severe impairment is a "statement[] on issues reserved to the Commissioner." <u>See</u> Dkt. No. 9 at 9; <u>see</u> <u>also</u> 20 C.F.R. § 416.920b(c)(3). "Statements on issues reserved to the Commissioner[]" are "inherently neither valuable nor persuasive." 20 C.F.R. § 416.920b(c).  "Commissioner" is defined as "Commissioner of Social Security <u>or his or her authorized designee</u>." 20 C.F.R. § 416.902(d) (emphasis added).  "A medical or psychological consultant designated by the Commissioner includes any medical or psychological consultant employed or engaged to make medical judgments by the Social Security Administration . . . ." 20 C.F.R. § 416.926(d); <u>see</u> <u>also</u> Richard C. Ruskell, *§ 2:15 Severe impairment,*

UNDERSTANDING THE SOCIAL SECURITY PROCESS, SOC. SEC. DISAB. CLAIMS HANDBOOK, n.26 (May 2022) ("SSA also considers the opinion given by one or more medical or psychological consultants designated by the Commissioner."); 20 C.F.R. § 416.913a(a) ("In claims adjudicated by the State agency, a State agency medical or psychological consultant may make the determination of disability together with a State agency disability examiner or provide medical evidence to a State agency disability examiner when the disability examiner makes the initial or reconsideration determination alone."). Thus, based on the language of the regulations, insofar as a state agency consultant is a designee of the Commissioner, statements on issues reserved to the Commissioner would also be reserved to the state agency consultants.[9]

This interpretation—that the prohibition on considering statements on issues reserved to the Commissioner does not apply to state agency consultants—is supported by SSR 17-2p.  SSRs "are binding on all components of the Social Security Administration."  Golden v. Colvin, No. 5:12-CV-665 (GLS/ESH), 2013 WL 5278743, at *6 (N.D.N.Y. Sept. 18, 2013) (quoting 20 C.F.R. § 402.35(b)(1)).  "However, they lack the force of law, and are not binding on courts."  Id. (citing Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984)).  "Social Security Rulings, although lacking *ipso jure* force of law, often are consulted and adopted as expressions of correct legal standards when the statute provides little guidance."  Id. (citation omitted); see also Arias v. Kijakazi, 623 F. Supp. 3d 277, 296, n.10 (S.D.N.Y. 2022); Pullum v. Astrue, 675 F. Supp. 2d 299, 311, n.8 (W.D.N.Y. 2009).

---

[9] Surprisingly, neither party cited the regulatory definition of "Commissioner."  See generally Dkt. Nos. 9, 14, 15.

SSR 17-2p explains that "[a]t subsequent levels of the administrative review process, the MCs' or PCs' administrative medical findings made at the initial or reconsideration levels are prior administrative medical findings, which are evidence." SSR 17-2p, 2017 WL 3928306, at *3 (footnote omitted).  "Although adjudicators at the hearings and AC levels are not required to adopt prior administrative medical findings when issuing decisions, adjudicators must consider them and articulate how they considered them in the decision." Id.  SSR 17-2p concerns the step-three Listing determination and not the step-two severity determination, but both determinations are considered statements on issues reserved to the Commissioner.  See id.; see also 20 C.F.R. § 416.920b(c)(3)(ii), (iv).  Although a statement about whether a plaintiff's impairment meets a Listing is considered a statement on an issue reserved to the Commissioner, see 20 C.F.R. § 416.920b(c)(3)(iv), SSR 17-2p explicitly instructs ALJs to consider such a statement when made by state agency consultants as evidence and to articulate consideration of the evidence.  See SSR 17-2p, 2017 WL 3928306, at *3.  The Court sees no reason why this logic should not equally apply to a statement about whether a plaintiff has a severe impairment.  Further, in its comments on its revisions to the regulations, the SSA stated that ALJs should consider prior administrative findings as evidence, and makes no exception for specific determinations, such as the severity determination.  See 82 FR 5844-01, 2017 WL 168819, at *5852.

Plaintiff argues that the POMS "is inconsistent with the regulations," because the regulations provide "no exception" for the state agency medical consultants as to statements that are on issues reserved for the Commissioner.  Dkt. No. 15 at 6 (citations and emphasis omitted).  The Court agrees that 20 C.F.R. § 416.920b(c) does

not make such a distinction but that does not necessarily render the POMS inconsistent with the statute; rather, such ambiguity necessitates the Court turning to the SSA's interpretation of its own regulation.  See Est. of Landers, 545 F.3d at 104 ("We only consider whether we should defer to the agency's interpretation of the statute, however, upon finding the statute ambiguous."); Nat. Res. Def. Council, Inc. v. Muszynski, 268 F.3d 91, 98 (2d Cir. 2001) ("If the plain meaning of a statute is susceptible to two or more reasonable meanings, i.e., if it is ambiguous, then a court may resort to the canons of statutory construction.").  The POMS "further construe[s]" what the regulation means when it refers to "issues reserved to the Commissioner."  Lopes, 696 F.3d at 186; 20 C.F.R. § 416.920b(c)(3).  The POMS clarifies that "[a] statement on an issue reserved to the Commissioner is a statement made by a medical source or a nonmedical source who is not part of the adjudicative team[.]"  POMS DI 24503.040(A), https://secure.ssa.gov/poms.nsf/lnx/0424503040 (last visited June 21, 2023).  As (1) the regulatory definition of "Commissioner," includes "designees," which state agency consultants are; and (2) the regulations and Social Security Rulings instruct ALJs to consider prior administrative medical findings as evidence, the Court concludes that the POMS are not inconsistent with the regulations.  See 20 C.F.R. § 416.902(d); SSR 17-2p, 2017 WL 3928306, at *3; 20 C.F.R. § 416.913a, 82 FR 5844-01, 2017 WL 168819, at *5852.  As such, the POMS' definition of statements on issues reserved to the Commissioner is accorded deference.  See Simonsen, 679 F. App'x at 58-59.  Accordingly, it was not legal error for the ALJ to articulate his consideration of the state agency consultants' prior administrative findings as evidence insofar as they concluded that plaintiff did not have a severe impairment.

**B.  Whether the ALJ's Step-Two Determination is Supported by Substantial Evidence**

"[A]t the second step of [the] sequential evaluation it must be determined whether medical evidence establishes an impairment or combination of impairments 'of such severity' as to be the basis of a finding of inability to engage in any [substantial gainful employment]."  SSR 85-28, Titles II & Xvi: Med. Impairments That Are Not Severe, 1985 WL 56856, at *3 (S.S.A. 1985); see also 20 C.F.R. §§ 416.920(c), 416.921.  "An impairment or combination of impairments is found 'not severe' and a finding of 'not disabled' is made . . . when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work . . . ."  SSR 85-28, 1985 WL 56856, at *3.  "Although an impairment is not severe if it has no more than a minimal effect on an individual's physical or mental ability(ies) to do basic work activities, the possibility of several such impairments combining to produce a severe impairment must be considered."  Id.  "If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process."  Id.  SSR 85-28 instructs that "[g]reat care should be exercised in applying the not severe impairment concept.  If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step.  Rather, it should be continued."  Id. at *4.

"The claimant bears the burden of presenting evidence establishing severity."  Taylor v. Astrue, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citation omitted).  "[T]he

23

standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases." McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014) (citing Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995)).  However, "the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.'" Taylor, 32 F. Supp. 3d at 265 (quoting Coleman v. Shalala, 895 F. Supp. 50, 53 (S.D.N.Y.1995)).

### 1. Plaintiff's Physical Impairments

### a. Parties' Arguments

Plaintiff argues that a combination of her medically determinable physical impairments—ulcerative colitis, IBS, and atrophy of the kidney—constitute a severe impairment.  See Dkt. No. 9 at 10.  She argues that those impairments "cause her both abdominal pain, vomiting, diarrhea, constipation and the need to use the bathroom (hesitancy, etc) with sufficient frequency and duration such that she would be off-task to a sufficient degree that it would have a more than de minimis impact on her ability to work."  Id.  Plaintiff contends that the ALJ did not consider whether episodes of nausea or abdominal pain could cause plaintiff to be off task while at work; the ALJ failed to consider plaintiff's urinary issues and vomiting as reasons she would need to use the restroom; the ALJ failed to consider the frequency and duration of bathroom breaks; and the ALJ improperly rejected the opinions from plaintiff's treating providers.  See Dkt. No. 9 at 11-12, 14-16.  Because of these errors, plaintiff argues that the ALJ's step-two determination is not supported by substantial evidence.  See id. at 10-16.  Plaintiff also

asserts that "[a]t the very least the evidence in this case is a sufficiently 'close call' such that the ALJ was obligated to continue the sequential analysis." Id. at 19.

The Commissioner argues that the ALJ correctly determined that plaintiff did not have a severe physical impairment, singularly or in combination. See Dkt. No. 14 at 6-15. The Commissioner contends that the ALJ's decision is supported by "progress notes showing that examinations at gastroenterology visits were within normal limits"; "evidence that medication controlled the symptoms of [p]laintiff's colitis, IBS, and GERD"; "progress notes showing that examinations by [p]laintiff's urologist were within normal limits"; and the state agency consultants' medical opinions. Id. at 7.

### b. ALJ's Decision[10]

In concluding that plaintiff's impairments alone, and in combination, were not "severe," the ALJ first discussed plaintiff's subjective complaints. See T. at 17. The ALJ recounted plaintiff's testimony that her colitis causes her to use the restroom twelve to eighteen times a day and "holding it" causes significant pain. Id. The ALJ noted that plaintiff's colitis medication helps with her colitis symptoms but makes her nauseous, fatigued, and anxious. See id. Plaintiff "also testified that she has only one working kidney, and this causes back pain. She also stated that her fingers and toes are affected by sepsis, and she has iron deficiency and anxiety." Id. The ALJ explained that "[w]ith regard to sepsis, [plaintiff] testified that she is able to hold a mug, but not utensils with her left hand." Id. Plaintiff also testified that she could only lift five pounds and stand for half an hour; she spent most of the day seated; and her typical day was spent showering, washing dishes, doing laundry, reading, and going to the bathroom.

---

[10] The Court relays only those portions of the ALJ's decision that relate to plaintiff's arguments.

See id. at 35-36, 42-48.  Plaintiff "testified that she does not drive often because she has a bad eye and experiences double vision."  Id. at 17.

The ALJ then reviewed the medical evidence.  First, ALJ Eldred noted that plaintiff was admitted to the hospital for sepsis in December 2017 and April 2018.  See T. at 17 (citing T. at 315-421, 512-634).  The ALJ stated that plaintiff "recovered from the first episode" and "her overall condition improved" after her second episode.  Id. (citing T. at 585).  ALJ Eldred noted that urology and gastroenterology examinations "were within normal limits[.]"  Id. (citing T. at 425, 428, 435, 442-43, 453, 462, 465; 468-69, 473-74; 769-70, 773-74, 926-27).  In August 2020, plaintiff reported that her gastroesophageal reflux and IBS symptoms were controlled with medication and her September 2020 colonoscopy was generally normal.  See id. at 762, 772.

As for plaintiff's testimony that she used the bathroom twelve to eighteen times a day, the ALJ stated that "the record shows that [plaintiff's] colitis symptoms have been fairly well controlled on medication[.]  Gastroenterology records state that [plaintiff] has five bowel movements or less per day[.]  On November 4, 2020, it was noted that [plaintiff] has only two or three bowel movements a day."  T. at 17 (citing T. at 774, 780, 809-10).  The ALJ concluded that "[a]ll of this information is inconsistent with [plaintiff's] testimony about the frequency with which she needs to use the bathroom."  Id. Following his brief discussion of the state agency consultants' opinion, see supra at 7, the ALJ found plaintiff's treating providers' opinions to be unpersuasive and concluded,

> [n]either of these assessments is well supported by a narrative explanation that cites underlying clinical findings.  I also find both of these opinions inconsistent with the record as a whole, including the evidence cited above in the evaluation of [plaintiff's] subjective complaints and in the explanation as to why she has not established a "severe" impairment.

T. at 19.

### c.  Analysis

As an initial matter, the Commissioner asserts that plaintiff waived arguments concerning (1) the merits of the ALJ's conclusion that the state agency medical consultants' opinions were persuasive; and (2) the Second Circuit's admonishment against discounting a medical opinion because it consisted of "checkmarks."  Dkt. No. 14 at 2, 4, 7, 13-15, 20.

Plaintiff's initial and reply briefs are entirely dedicated to challenging the ALJ's conclusion that the four state agency consultants' opinions were persuasive, and that plaintiff did not have any severe impairments.  See generally Dkt. Nos. 9, 15.  First, as discussed, plaintiff argues that it was legal error for the ALJ to conclude that the opinions were persuasive.  See supra at 7; see also Dkt. No. 9 at 8-10.  Second, plaintiff argues that the ALJ's step-two determination is not supported by substantial evidence and that the evidence supports a finding that plaintiff has a severe impairment.  See Dkt. No. 9 at 10-16.

To be sure, plaintiff does not state that she is specifically challenging the merits of the ALJ's persuasiveness conclusion regarding the four state agency medical consultants' opinions.  See generally Dkt. No. 9.  However, plaintiff bears the burden at step two.  See Taylor, 32 F. Supp. 3d at 265.  She argues that she has met that burden by relying on evidence and medical opinions that she contends the ALJ did not properly consider.  See Dkt. No. 9 at 10-16.  As plaintiff states in her reply, the Commissioner acknowledges that "[p]laintiff's second argument challenges the ALJ's decision to adopt the findings by the State agency physicians that [p]laintiff's physical impairments were

not severe[.]"  Dkt. No. 14 at 6; <u>see also</u> Dkt. No. 15 at 1.  The Court agrees with plaintiff

that inherent in her argument that the ALJ erred in making his step-two determination is

a direct challenge to the ALJ's reliance on the state agency consultants' opinions.  <u>See</u>

Dkt. No. 15 at 2; <u>see</u> <u>also</u> <u>Virginia R. v. Saul</u>, No. 5:19-CV-01264 (TWD), 2020 WL

6131965, at *4 (N.D.N.Y. Oct. 19, 2020) (citation omitted) ("[The d]efendant attempts to

side-step the ALJ's legal error and instead contends [the p]laintiff did not raise any issue

with the ALJ's failure to consider or even mention [the doctor's] letter and treatment

history.  However, the Court finds [the p]laintiff did not waive this argument and

appropriately raised it when she discussed that the ALJ ignored favorable evidence. . . .

Seemingly acknowledging the ALJ's error, [the d]efendant argues [the doctor's] letter

was too vague and did not include any functional limitations and, thus, not mentioning

the letter was harmless.").  Additionally, plaintiff's argument that the ALJ's supportability

analysis was insufficient is enough for the Court to address the applicability of the

Second Circuit's caselaw concerning check-mark opinions.

In attempting to meet her step-two burden, plaintiff relies on the medical opinions

from her treating gastroenterologist, Amanke Oranu, M.D., and treating provider Victoria

Engler, FNP.  <u>See</u> Dkt. No. 9 at 14-15.  Dr. Oranu opined that plaintiff had ulcerative

colitis, diarrhea, abdominal pain, and gastroesophageal reflux, for which plaintiff

required unlimited, immediate, and urgent access to a bathroom.  <u>See</u> T. at 933.  Dr.

Oranu indicated that plaintiff's conditions cause her pain, fatigue, diminished

concentration, diminished work pace, and the need to rest.  <u>See</u> <u>id.</u> at 934.  Dr. Oranu

wrote that plaintiff's conditions would cause her to be off task to a "variable" degree, "but

maybe up to or less 50%."  <u>Id.</u>  Dr. Oranu opined that plaintiff would likely miss more

than four days of work per month, but it would be "variable." <u>Id.</u>  Finally, Dr. Oranu indicated that plaintiff's condition had improved since January 1, 2020, "but still persists as of" September 8, 2021.  <u>Id.</u> at 935.

FNP Engler did not state what conditions or diagnoses plaintiff had but indicated that plaintiff's conditions would cause pain, fatigue, diminished work pace, and a need to rest.  <u>See</u> T. at 930.  FNP Engler also indicated that plaintiff would be off task for more than twenty percent but less than thirty-three percent of a workday and she would miss four days of work per month.  <u>See id.</u> at 930-31.  She wrote that plaintiff's blood pressure medications caused fatigue and that plaintiff could sit for four hours, would have to switch between sitting and standing every hour, could stand or walk for two hours, and should never lift over ten pounds.  <u>See id.</u> at 931.  FNP Engler also noted that plaintiff's conditions would require unlimited, urgent, and immediate access to the bathroom; and that her conditions had not improved since January 1, 2020.  <u>See id.</u> at 932.

The ALJ determined that these opinions were unpersuasive because "[n]either of these assessments is well supported by a narrative explanation that cites underlying clinical findings.  I also find both of these opinions inconsistent with the record as a whole, including the evidence cited above . . . ."  T. at 19.

In support of her substantial evidence argument, plaintiff relies on cases in which a court has concluded that the ALJ's decision was not supported by substantial evidence because the ALJ did not discuss the frequency and length of anticipated bathroom breaks that the plaintiff would have to take because of his or her genitourinary and/or gastrointestinal impairments.  <u>See</u> Dkt. No. 12-13 (citing <u>Lowe v. Colvin</u>, No.

6:15-CV-06077(MAT), 2016 WL 624922, at *6 (W.D.N.Y. Feb. 17, 2016); <u>Debra Lanette</u>
<u>P. v. Comm'r of Soc. Sec.</u>, No. 5:20-CV-1634 (CFH), 2022 WL 1063169, at *8 (N.D.N.Y.
Apr. 7, 2022); <u>Spaulding v. Astrue</u>, 702 F. Supp. 2d 983, 995 (N.D. Ill. 2010); <u>White v.</u>
<u>Barnhart</u>, 340 F. Supp. 2d 1283, 1288-89 (N.D. Ala. 2004); <u>Compston v. Astrue</u>, 2:10-
CV-818, 2011 WL 4360106, at *11 (S.D. Ohio July 18, 2011), <u>report and</u>
<u>recommendation adopted</u>, 2011 WL 4360097 (S.D. Ohio Sept. 19, 2011); <u>Brueggen v.</u>
<u>Barnhart</u>, 06-C-0154, 2006 WL 5999614, at *7 (W.D. Wis. Dec. 15, 2006); <u>Green v.</u>
<u>Astrue</u>, 3:09-CV-331, 2010 WL 2901765, at *4-5 (E.D. Tenn. July 2, 2010), <u>report and</u>
<u>recommendation adopted</u>, 2010 WL 2901762 (E.D. Tenn. July 20, 2010)).

However, as the Commissioner states, in each of those cases, the ALJ
determined that the plaintiff's genitourinary and gastrointestinal impairments were
severe impairments and the courts' conclusions that the ALJs erred were in relation to
the RFC determinations.  <u>See</u> Dkt. No. 14 at 10-11; <u>see also</u> <u>Lowe</u>, 2016 WL 624922, at
*6; <u>Debra Lanette P.</u>, 2022 WL 1063169, at *8; <u>Spaulding</u>, 702 F. Supp. 2d at 995;
<u>White</u>, 340 F. Supp. 2d at 1288-89; <u>Compston</u>, 2011 WL 4360106, at *7; <u>Brueggen</u>,
2006 WL 5999614, at *3; <u>Green</u>, 2010 WL 2901765, at *1.

The Court has been unable to find a case directly on point, in which a plaintiff
had medically determinable impairments similar to plaintiff and the ALJ concluded that
the plaintiff had no severe impairments.  However, given the <u>de</u> <u>minimis</u> burden at step-
two and the Second Circuit's instruction that the severity determination is meant to
weed out only "the very weakest cases," the Court finds that the ALJ's determination is
not supported by substantial evidence and remand is warranted for further consideration
of the severity of plaintiff's physical impairments.  <u>McIntyre</u>, 758 F.3d at 151.

In evaluating medical opinions, the ALJ is required to articulate consideration of the supportability and consistency of an opinion which means that an ALJ "will explain how" he or she considered those factors.  20 C.F.R. § 416.920c(b)(2).  "Supportability" means "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(1).  "Consistency" means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 41.920c(c)(2).  The ALJ's review of the medical opinions addresses only a portion the regulations' "supportability" factor and insufficiently addresses the "consistency" factor.

The supportability factor requires an ALJ to ask whether a medical source provided supporting explanations for his or her opinion.  See id.  The only explanations that FNP Engler and Dr. Oranu provided concerned the impairments plaintiff had, side effects she suffered from medication, and the persistence of her limitations until the date the opinions were signed.  See T. at 930-35.  However, 20 C.F.R. § 416.920c(c)(1) also requires the ALJ address the objective medical evidence presented by a medical source.  See 20 C.F.R. § 416.920c(c)(1).  The ALJ stated that neither treating provider "cite[d] underlying clinical findings."  T. at 19.  The regulations do not state that a medical provider must "cite" underlying clinical finding.  See 20 C.F.R. § 416.920c.  The ALJ did not articulate consideration of whether FNP Engler's or Dr. Oranu's treatment

notes that were available in the record supported their opinions.  See T. at 19.  The ALJ also did not sufficiently "explain" the consistency between the treating providers' opinions and the evidence from other medical and nonmedical sources in the claim besides summarily asserting that the opinions were inconsistent with "the evidence cited above."  Id.

Plaintiff cites Loucks and Colgan to support the argument that "[t]he ALJ needs to explain how he considered the supportability and consistency factors[]" and cannot do so in a vague and conclusory manner.  Dkt. No. 9 at 15-16.  In Loucks, the Second Circuit reversed and remanded the case because

> the ALJ committed procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record. Although [the state agency consultant's] opinion was the only one that the ALJ found persuasive, the ALJ did not address the opinion's supportability or explain how the opinion was consistent with the record, except to conclude that it was. *See* Admin. R. on Appeal at 24 ("I find this determination somewhat persuasive as it is generally consistent with the evidence of record."). Similarly, the ALJ did not address the consistency of [the consultative examiner's] opinion except to say that "it [was] inconsistent with the evidence of record during the relevant period."

Loucks v. Kijakazi, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (citation omitted).  The Court explained that "[d]espite the ALJ's procedural error, [the Court] could affirm if a searching review of the record' assures us 'that the substance of the [regulation] was not traversed."  Id. (quoting Estrella v. Berryhill, 925 F.3d 90, 95 (2d Cir. 2019)) (quotation marks omitted) (second alteration in original).  The Court concluded that the ALJ's procedural error was not harmless because the ALJ did not discuss the fact that all of the opinion evidence in the record supported limitations in staying on task and attendance and the treatment records "consistently showed that [the plaintiff] had serious psychological symptoms year after year."  Id.

32

In Colgan, the Second Circuit clarified that "the evidentiary weight of a treating physician's medical opinion can[not] be discounted by an ALJ based on the naked fact that it was provided in a check-box form." Colgan v. Kijakazi, 22 F.4th 353, 361 (2d Cir. 2022) (footnote omitted). The Court noted that the treating physician's opinion at issue "was supported by voluminous treatment notes gathered over the course of nearly three years of clinical treatment." Id. at 362. Thus, for this and a number of other reasons, the Court concluded that the treating physician's opinion was entitled to controlling weight and vacated and remanded the decision. See id. at 363-63.

The Commissioner combats plaintiff's reliance on these cases because, here, the ALJ did not discount the treating providers' opinions because they were check box forms and because in Loucks, "the ALJ did not cite any evidence supporting the findings that one opinion was 'generally consistent with the evidence of record' and that another opinion was 'inconsistent with the evidence of record.'" Dkt. No. 14 at 14 (citation omitted). The Commissioner distinguishes ALJ Eldred's decision because he "cited specific evidence, then incorporated those citations by reference into his evaluation of the" medical opinions. Id. The Commissioner also notes that "Loucks recites the familiar principle that a court may affirm an ALJ's decision despite noncompliance with the regulation governing the evaluation of opinion evidence 'if a searching review of the record assures [the court] that the substance of the [regulation] was not traversed.'" Id., n.11 (citation omitted). The Commissioner states that in this case "such a review reveals that the State agency physicians determined that [p]laintiff did not have any severe physical impairments." Id.

33

The ALJ did not mention any opinion being completed on check-box form nor discount an opinion on that ground.  See T. at 19.  The ALJ did, however, state in a conclusory manner that Dr. Oranu's and FNP Engler's opinions were not "well supported by a narrative explanation that cites underlying clinical findings[]" and they were "inconsistent with the record as a whole, including the evidence cited above[.]"  Id.

Loucks and Colgan stand for the same general proposition: it is inappropriate for an ALJ to discount a treating provider's opinion because it does not contain narrative explanations or citations to that provider's treatment notes, without greater analysis explaining the decision.  District courts in the Second Circuit have reiterated this proposition and concluded that an ALJ errs where he or she summarily concludes that an opinion is unsupported by treatment notes or inconsistent with the record.  See Stephanie F. v. Kijakazi, No. 8:20-CV-1528 (BKS), 2022 WL 3355964, at *10 (N.D.N.Y. Aug. 15, 2022) ("[T]he ALJ's conclusory statement that [the provider's] conclusions 'are not consistent with the overall medical evidence' is not an adequate articulation of the consistency factor."); Annjeanette B. v. Kijakazi, No. 3:22-CV-198 (ATB), 2023 WL 3040663, at *8 (N.D.N.Y. Apr. 21, 2023) ("The ALJ merely concludes that [the] opinions regarding time off-task and absenteeism are 'purely speculative,' without further explanation.  However, the ALJ appears to ignore [one provider's] written explanation for his opinion, attributing the amount of time plaintiff would be off-task and absent to [the] plaintiff's limited mobility and concentration from her chronic back pain; her pain and frequent bathroom trips due to Crohn's Disease; her shortness of breath and coughing due to asthma; and her difficulty concentrating and staying on task due to her bipolar disorder.  Likewise, [the other provider] cited to [the] plaintiff's symptoms

stemming from Crohn's disease, chronic knee and back pain, and bipolar disorder as support for her restrictive opinion concerning time off-task and absenteeism."); Ayala v. Kijakazi, 620 F. Supp. 3d 6, 31 (S.D.N.Y. 2022) (collecting cases) (citations and quotation marks omitted) ("The ALJ's assessment of the supportability of [the] opinions is highly conclusory.  The ALJ offered only that '[one] opinion is supported by record review' and that '[the other] opinion is supported by examination.'  Such conclusory statements offer no insight into 'how well [either doctor] supported and explained their opinion,' and are insufficient to withstand review.").

Here, too, the ALJ summarily concluded that FNP Engler's and Dr. Oranu's opinions were unsupported and inconsistent, and such conclusory statements are insufficient to meet the articulation requirements of the regulations.  See T. at 19.  As the Commissioner points out, the ALJ added the phrase, "to the records cited above," to his analysis and did not reference "the record as a whole."  Id.; see also Dkt. No. 14 at 13.  This does not cure the deficiency in the ALJ's articulation of the supportability and consistency factors when the "records cited above" do not discuss or reconcile relevant treatment records.  T. at 19.

In Dr. Oranu's treatment records, Dr. Oranu noted that a 2019 X-ray was "concerning for nephrolithiasis this showed increased stool throughout the colon comparable with constipation.  Upper GI serial showed large diaphragmatic hernia and paraoesophageal hernia not excluded . . . ."  T. at 474.  A 2020 colonoscopy "showed normal findings of biopsy significantly excessive colitis."  Id. at 922.  Dr. Oranu recommended a medication change for plaintiff's GERD; assessed plaintiff for anemia,

epigastric abdominal pain, gas bloating disorder, and IBS with diarrhea; and noted that plaintiff had "abnormal stool studies." Id. at 471.

FNP Engler primarily treated plaintiff for ADHD, hyperlipidemia, and COPD. Nevertheless, in some of her treatment notes, she indicated that plaintiff's abdomen was tender and suprapubic on examination, she had an acute kidney injury likely secondary to dehydration from vomiting and diarrhea, she had a tender abdomen on examination and decreased breath sounds, and she was started on new medication for her Colitis. See T. at 687, 698, 898, 903. The ALJ did not discuss whether FNP Engler's or Dr. Oranu's treatment notes supported their respective opinions.

As to consistency, as the Commissioner states, an ALJ is not required to cite or discuss every medical record that he relied on. See Dkt. No. 14 at 10; see also Brault, 683 F.3d at 448 (citations and quotation marks omitted) ("[A]n ALJ is not required to discuss every piece of evidence submitted. An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered."). However, the ALJ must cite enough records or provide enough of an explanation such that the Court can glean his rationale. See Cichocki v. Astrue, 729 F.3d 172, 178, n.3 (2d Cir. 2013) (per curiam) (citation and quotation marks omitted) ("An ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits us to glean the rationale of an ALJ's decision[.]").

The ALJ did not reconcile relevant records with the medical opinions. First, the ALJ did not, anywhere in his decision, reiterate FNP Engler's or Dr. Oranu's conclusions that plaintiff would need immediate access to the bathroom, would be off task for twenty to thirty-three percent or "up to or less [than] 50%" of a work day, and would likely miss

four or more days of work per month.  T. at 930-31, 934.  Second, the ALJ

acknowledged that plaintiff "was admitted to the hospital for sepsis in

December 2017 and April 2018."  T. at 17.  However, unacknowledged by the ALJ is not

only that plaintiff's December 2017 hospitalization lasted twelve days, but that plaintiff

was also admitted to the hospital in June 2019, July 2020, and August 2021.  See id. at

316, 567, 517-65, 898.[11]  When she was admitted in 2017, plaintiff complained of

abdominal pain lasting five days and she was assessed for sepsis but that was

"secondary to E coli UTI."  Id. at 316, 584.  Her 2020 and 2021 hospital visits were for

colitis.  See id. at 517, 898.  The ALJ did not explain how these hospitalizations

impacted the severity determination.  See id. at 17-20.  Third, the ALJ stated that

plaintiff "reported a pain level of '0/10' on July 16, 2020," id. at 19, but plaintiff reported

her pain was an 7/10 on April 25, 2018, and was an 8/10 and "severe" on July 4, 2020.

See id. at 487, 522, 573.  Plaintiff often reported abdominal pain which sometimes

lasted for multiple days.  See id. at 316, 461, 472, 501, 590, 684, 690, 695, 771-73.

The ALJ reiterated plaintiff's testimony that "hold[ing] it" causes her pain and her kidney

problems cause back pain but did not discuss the records showing consistent or severe

abdominal pain.  See id. at 17.  The LAJ did not explain how the medical opinions were

inconsistent with this evidence.  See id. at 17-19.

Importantly, the consistency analysis is not limited to objective evidence, but

requires an ALJ to compare a medical opinion to "the evidence from other medical

---

[11] In stating that plaintiff was "admitted to the hospital for sepsis in December 2017 and April 2018," the ALJ cited "Exhibits 1F and 5F."  T. at 17.  Exhibit 5F also contains plaintiff's 2019 and 2020 hospital records.  See id. at 556, 567.  The ALJ's citation to over one hundred pages of hospital records is insufficient to ensure consideration of all of plaintiff's hospitalizations and the impact on the severity determination where the ALJ did not once mention the additional hospitalizations in his decision.

sources and nonmedical sources in the claim[.]"  20 C.F.R. § 416.920c(c)(2).  Plaintiff is a nonmedical source.  See 20 C.F.R. § 416.902(j)(1).  The ALJ did not explain how the medical opinions were inconsistent with plaintiff's testimony and subjective complaints that she used the restroom for four to five hours a day; had continuous flare ups of her IBS and colitis; she was tired and nauseous from medication; she did not receive a warning but had to use the restroom immediately; if she were to walk the length of a mall or for ten minutes, she would have to find a bathroom; and she had abdominal for several days to weeks at a time.  See, e.g., T. at 33-34, 38, 47, 432, 461, 468, 522; see also Annjeanette B., 2023 WL 3040663, at *10 ("[T]he court cannot conclude that [the] restrictive opinions as to time off-task and absenteeism, as later substantiated by [another] opinion, were inconsistent with the record as a whole.  [The p]laintiff testified that she needed to be in proximity to a bathroom during the workday, and that the length and frequency of her required bathroom breaks at her last employment interfered with her ability to do her job.  She specified that she spent three to four hours out of an eight-hour shift in the bathroom."); see also Cassandra G. v. Comm'r of Soc. Sec., 626 F. Supp. 3d 553, 570 (N.D.N.Y. 2022) (citation omitted) ("[T]he ALJ did not cite or discuss [the] plaintiff's most recent treatment records, indicating 'that many MD appointments have been missed and that there is a temporary hold on [plaintiff's] ability to schedule any further MD appointments until consultation with this therapist's supervisor.'  The ALJ also did not, anywhere in the decision, discuss [the providers'] opinion that plaintiff would be off task for more than twenty percent of a workday and miss more than four days of work per month. The ALJ then did not explain whether the records showing that plaintiff struggled with attending her appointments supported that

opinion."); Jacquelyn V. v. Kijakazi, No. CV 21-CV-314 (MSM), 2023 WL 371976, at *5 (D.R.I. Jan. 24, 2023) (citation omitted) (second alteration in original) ("[W]hether at Step Two or at the RFC phase, it is error for an ALJ to ignore the impact on the ability to work of multiple impairments each of which could impact attendance, particularly where it is 'undisputed that [the claimant's medical] issues required ongoing treatment throughout [an extended period].'").

The Commissioner harks back to the ALJ's discussion of "[p]laintiff's allegations of nausea, abdominal pain, and urinary issues" and that "the State agency physicians reviewed the entire record, and mentioned [p]laintiff's allegations of urinary issues[.]" Dkt. No. 14 at 10 (citations omitted).  The problem is that ALJ did not discuss the medical records which corroborate plaintiff's allegations of urinary issues, abdominal pain, and vomiting.  This is particularly problematic where plaintiff was hospitalized in part because of continuous vomiting, abdominal pain, and a urinary tract infection in 2018 and 2021, and two treating medical opinions support plaintiff's testimony.  See T. at 316, 330, 425, 573, 831, 898.  Contrary to the Commissioner's statement that the state agency consultants reviewed the entire record, no consultant reviewed the medical opinions from plaintiff's treating providers as they were completed after the initial and reconsideration determinations were finalized.  See id. at 17, 67-68, 80-81, 93-94, 932, 935.

The ALJ and the Commissioner recite the correct durational standard, that in order to determine that plaintiff has a severe impairment, there must be significant functional limitations over a 12-month period.  See T. at 16, 20; see also Dkt. No. 14 at 9-10.  It is unclear to the Court, based on the ALJ's entire decision and the record, how

plaintiff did not have a severe physical impairment for any 12-month period from January 1, 2018, to October 28, 2021.  For example, between May 6, 2019, and July 8, 2020, plaintiff was hospitalized twice and had roughly ten follow up appointments at which she sometimes complained of lower abdomen pressure, abdominal pain, frequent urination, and back and flank pain.  See T. at 422, 432, 452, 461, 467, 472, 567, 635, 643, 653, 661, 668.  Whether because of the pain or the time she would miss work because of being in the hospital, attending follow-up appointments, or being in the bathroom, the ALJ's decision does not sufficiently explain why this evidence is insufficient to establish a severe impairment.

The medical records and plaintiff's complaints and testimony appear sufficient to overcome the "de minimis" standard which is intended to weed-out only "the very weakest" claims.  McIntyre, 758 F.3d at 151.  At the very least, it is a close enough call that the ALJ should have continued the sequential evaluation.  Compare Pavia v. Astrue, No. 5:10-CV-818 (GTS/DEP), 2012 WL 4449859, at *9 (N.D.N.Y. Aug. 20, 2012) (citation omitted) ("[T]he record is replete with references to [the] plaintiff's headache complaints and efforts of treating sources to address that condition.  During the hearing in this matter [the] plaintiff testified that she suffers from frequent headaches, occasionally causing her to experience sensitivity to light and requiring her to lie down and nap in order to address them, and that the headaches preclude her from performing work functions.  At step two, sufficient evidence existed in the record to conclude that [the] plaintiff's headaches were sufficiently severe to meet the modest test imposed at that stage of the analysis."); Stanley v. Colvin, No. 6:12-CV-1899 (GTS), 2014 WL 1311963, at *5 (N.D.N.Y. Mar. 31, 2014) ("[C]onsidering the *de minimis*

40

standard for a finding of severity, it was error for the ALJ to conclude that [the p]laintiff's back pain is not severe[]" because the medical record shows complaints of constant pain, tenderness on examination, slightly diminished range of motion, and mild curvature on X-ray); Inzinca v. Comm'r of Soc. Sec., No. 18-CV-6289, 2020 WL 1163993, at *3 (W.D.N.Y. Mar. 11, 2020) ("[T]he record is replete with medical evidence demonstrating [the p]laintiff's continuous struggle with back pain. . . .  Both treatment records and [the p]laintiff's hearing testimony pay tribute to the severity of Plaintiff's cervicalgia and thoracic impairments . . . .  In her medical source statement, [the provider] identified [the p]laintiff's thoracic back pain as the reason why [the p]laintiff could not engage in full-time competitive employment."), with Duross v. Comm'r of Soc. Sec., No. 1:05-CV-368 (RFT), 2008 WL 4239791, at *6 (N.D.N.Y. Sept. 11, 2008) (finding no error in the ALJ's "non-severe" finding because "aside from reciting varying weight fluctuations, [the p]laintiff fails to show that her obesity significantly limits her ability to do basic work activities.  [T]hough her obesity was consistently documented through weight measurements, no examining physician opined that her obesity caused any limitations."); Walter v. Saul, No. 19-CV-522 (HKS), 2020 WL 5269537, at *4 (W.D.N.Y. Sept. 4, 2020) (citations omitted) (finding no error in the step-two determination because the plaintiff's "GERD is 'well controlled with Prilosec'"; the "[p]laintiff denied abdominal pain, change in bowel habits, constipation, diarrhea, and other gastrointestinal symptoms"; and examinations in 2015 2016, and 2017 reflected that the plain the "[p]laintiff's GERD status remained stable.); Janet L.K. v. Saul, No. 1:20-CV-0725 (GTS), 2021 WL 2592899, at *5 (N.D.N.Y. June 24, 2021) (citations omitted) (finding no error in the ALJ's step-two determination because the "[p]laintiff

herself does not suggest what specific limitation the ALJ should have included based on the record . . . .  Although the record shows that [the p]laintiff was hospitalized on multiple occasions related to abdominal pain, vomiting, diarrhea, and constipation, it also shows that treatment was helpful to reduce her symptoms on those occasions.  No medical or vocational source has opined that [the p]laintiff has any specific limitations related to bathroom frequency-of-use, or that any such limitation would indeed impact her ability to perform work in the national economy.").

Finally, because of the deficiencies in the ALJ's consideration of the records and treating medical opinions, the state agency consultants' opinions alone cannot constitute substantial evidence in support of the severity determination.  See Almonte v. Comm'r of Soc. Sec., No. 21-CV-3091 (PKC), 2022 WL 4451042, at *8-10 (E.D.N.Y. Sept. 23, 2022) (concluding that the consultative examiner's and state agency consultants' opinions could not constitute substantial evidence in support of the ALJ's decision because the consultative examiner did not review the plaintiff's treatment notes, the ALJ did not "failed to articulate the supportability and consistency factors with respect to" the examiner's conclusions and the non-examining consultants' opinions were outdated).  Based on the foregoing, the ALJ's severity determination is not supported by substantial evidence and remand is warranted on this ground.[12]

---

[12] Insofar as plaintiff seeks a remand for the calculation of benefits, that is not warranted at this juncture.  See Dkt. No. 9 at 19.  Plaintiff's brief does not set forth why the Court should remand for the calculation of benefits and there is not conclusive proof of disability in the record.  See id.  The state agency consultants' opinions are contradictory to a disability finding.  See T. at 63, 70, 85, 98; see also Laurie G. v. Kijakazi, No. 8:21-CV-1232 (DEP), 2023 WL 1765430, at *9 (N.D.N.Y. Feb. 3, 2023) (citations omitted) ("If . . . 'the record contains persuasive proof of disability, and a remand for evidentiary proceedings would serve no useful purpose,' reversal for calculation of benefits is appropriate.  'The Court's determination whether to remand for further administrative proceedings or for a calculation of benefits is discretionary.'").  Thus, the Court will remand for further proceedings.

### 2. Plaintiff's Mental Impairments

Plaintiff argues that the ALJ erred in concluding that plaintiff did not have a severe mental impairment because the ALJ's review of consultative examiner, Marisol Valencia-Payne, Psy.D.'s opinion is conclusory, the opinion is supported by her examination and other treatment notes in the record, and plaintiff's "limited activities of daily living the ALJ mentions do not contradict Dr. Valencia-Payne's opinion and do not demonstrate the ability to engage in full-time work on a regular and continuing basis[.]" Dkt. No. 9 at 17-18.  The Commissioner argues that the ALJ properly relied on the state agency consultants' medical opinions, the ALJ properly discounted Dr. Valencia-Payne's opinion, and the ALJ was required to consider plaintiff's activities of daily living as part of his determination.  See Dkt. No. 14 at 15-20.

### a. Medical Opinions and the ALJ's Decision

Dr. Valencia-Payne concluded that plaintiff's mental limitations ranged from "no[] evidence [of] limitations" to "moderate to marked limitations."  T. at 760.  Plaintiff's mental status examination was normal aside from "fair personal hygiene and grooming"; "significantly anxious" affect; "stressed and anxious" feelings; mildly impaired attention, concentration, and recent and remote memory skills; and "fair" insight and judgment.  T. at 758-59.  As part of the initial disability determination, J. Weitzen, Ph.D., concluded that Dr. Valencia-Payne's opined "moderate limitations not fully supported by evaluation, [plaintiff's] functional abilities, available [medical evidence], or [plaintiff's] stated [history]."  T. at 61.  S. Juriga, Ph.D.'s conclusion as part of the reconsideration determination is identical.  See id. at 82-83.

The ALJ stated that "[a]lthough a consultative examiner diagnosed [plaintiff] with mental impairments, the record does not support the existence of a 'severe' mental impairment[.]"  T. at 18 (citing T. at 756-61).  The ALJ explained that plaintiff's "attention deficit hyperactivity disorder has repeatedly been described as well controlled with medication[.]  Medical records dated June 3, 2020[,] state that [plaintiff] was not depressed, while medical records from November 4, 2020, May 18, 2021, and August 20, 2021, include normal mental status examination findings[.]"  Id. (citing T. at 682, 734, 783, 790, 901, 912, 920 927).  The ALJ noted, "[t]here is no evidence of ongoing treatment from a mental health specialist, such as a counselor, psychologist, or psychiatrist."  Id.

In delineating his consideration of the four mental health "paragraph B" criteria, the ALJ concluded that plaintiff had mild limitations in all four areas of functioning.  See T. at 18.  As for understanding, remembering, or applying information, he explained that plaintiff's "memory has been characterized as normal[.]  At the consultative examination, her recent and remote memory skills appeared to be mildly impaired, and her intellectual functioning was estimated to be in the average range, with an appropriate fund of information[.]"  Id. (citing T. at 672, 687, 693, 699, 708, 759).  Then, in interacting with others, the ALJ explained that plaintiff "reported that she does not have problems getting along with her family or authority figures, and that she has not lost a job due to problems getting along with others[.  Plaintiff] reported that she has good relationships with her children and socializes with her family[.]"  Id. (citing T. at 254-54, 760).  In concentrating, persisting, or maintaining pace, ALJ Eldred reiterated that plaintiff "stated that she can pay attention for 30 minutes[.]  At the consultative

44

examination, [plaintiff's] attention and concentration were only mildly impaired[.]" Id. (citing T. at 254, 759). He also noted that plaintiff's "treatment provider has described [plaintiff's] attention as normal. The record also shows that [plaintiff's] attention deficit disorder is well controlled[.]" Id. (citing T. at 657, 673, 682, 790, 912). Finally, in adapting and managing oneself, the ALJ concluded that plaintiff "does not need help with activities of daily living[.] She indicated that she is able to pay bills, count change, handle a saving account, and use a check or money order[.] She has also managed her mental health symptoms without treatment from a mental health professional." Id. at 18-19 (citing T. at 252, 783).

As with plaintiff's physical impairments, the ALJ relied on the state agency medical consultants' opinions relating to plaintiff's mental impairments. See T. at 19. The ALJ stated the same analysis for all four non-examining consultants' opinions. See supra at 7. The ALJ then concluded that "[t]he medical source statement from consultative examining psychologist Marisol Valencia-Payne, Psy.D. is unpersuasive." T. at 19. ALJ Eldred concluded, "[t]his opinion is not well supported by Dr. Valencia-Payne's actual mental status examination findings, which were relatively benign. Moreover, this opinion is inconsistent with the evidence discussed above in explaining why [plaintiff] has not established a 'severe' mental impairment." Id. (citation omitted).

### b.  Analysis

As explained, the supportability factor addresses whether an opinion is supported by "objective medical evidence and supporting explanations[.]" 20 C.F.R. § 416.920c(c)(1); see supra at 28. The consistency factor compares a medical opinion

to other evidence from medical and nonmedical sources in the record.  See 20 C.F.R. § 416.9820c(c)(2); see supra at 28.

"[T]he Second Circuit has held that a doctor's reliance on subjective complaints does not necessarily undermine his opinion of the claimant's functional limitations.  That is particularly true in the case of mental health impairments."  Leanne S. v. Comm'r of Soc. Sec., No. 3:20-CV-1447 (CFH), 2022 WL 4448245, at *21 (N.D.N.Y. Sept. 23, 2022) (internal quotations, citations, and alterations omitted).  Additionally, Dr. Valencia-Payne's conclusions were not based solely on plaintiff's subjective complaints, but objective observations and findings such as plaintiff appearing "significantly anxious," having only fair hygiene, judgment, and insight; and her attention, concentration, recent memory, and remote memory being impaired.  See T. at 758-59.  The ALJ did not explain why plaintiff's subjective complaints and the examination findings did not support or were inconsistent with Dr. Valencia-Payne's conclusions.  See id. at 19.  The Court cannot glean the ALJ's rationale where, for example, Dr. Valencia-Payne concluded that plaintiff had moderate limitations in interacting with others, and moderate to marked limitations in sustaining concentration, performing at a consistent pace, regulating her emotions, controlling her behavior, and maintain her well being.  See id. at 760.  These limitations appear supported by plaintiff's insight, judgment, and personal hygiene being only "fair"; her statement that when he is not feeling well, she would skip bathing for days; her report that her ex-husband helps manage her money; her statement that her relationships are mainly with her children and family; and her mildly impaired concentration, attention, and recent and remote memory skills.  Id. at 758-60.

Further, the ALJ does not explain why plaintiff's activities of daily living are inconsistent with Dr. Valencia-Payne's opinion. See T. at 19. The ALJ concluded that Dr. Valencia-Payne's opinion was "inconsistent with the evidence discussed above in explaining why [plaintiff] has not established a 'severe' mental impairment." Id. "Above" this statement, the ALJ noted that plaintiff "reported that she is able to dress and bathe herself, cook and prepare meals, do laundry, read, ride in a car, and listen to music[.]" Id. (citing T. at 759-60). He also stated, "[m]edical records from June 3, 2020, state that [plaintiff] does not need help with activities of daily living[.] On her Function Report, [plaintiff] reported that she showers, reads, does laundry, watches television, and washes dishes[.] The record also shows that [plaintiff] regularly travels back and forth between New York and Florida[.]" Id. (citing T. at 249-56, 268-75, 330, 783, 893, 922).[13]

The ALJ did not explain why Dr. Valencia-Payne's opinion is inconsistent with this evidence, when Dr. Valencia-Payne relied on plaintiff's activities of daily living that are nearly identical to those reiterated by the ALJ. See T. at 19, 759-60. Additionally, the record that the ALJ cites to support plaintiff's travel to Florida in 2018 states that she

---

[13] Insofar as plaintiff asserts, "[t]he limited activities of daily living the ALJ mentions do not contradict Dr. Valencia-Payne's opinion and do not demonstrate the ability to engage in full-time work on a regular and continuing basis," Dkt. No. 9 at 18, the Commissioner states that it is "unclear to the Commissioner why [p]laintiff makes those assertions[]" "[b]ecause the ALJ made no such findings[.]" Dkt. No. 14 at 19. In his decision, the ALJ discussed plaintiff's activities of daily living, and later, in discounting Dr. Valencia-Payne's opinion stated that it was "inconsistent with the record as a whole, including the evidence cited above[.]" T. at 19. Earlier in the Commissioner's brief, she explicitly asks the Court to look to the ALJ's decision as a whole, particularly his earlier recitation of evidence, as "[t]here is no reason in law or logic why the ALJ should have copied and pasted his discussion of that evidence into his evaluation of the Pertinent Opinions." Dkt. No. 14 at 14. The Court is required to look at the entire ALJ's decision when reviewing for substantial evidence. See John L. M. v. Kijakazi, No. 5:21-CV-368 (BKS/TWD), 2022 WL 3500187, at *2 (N.D.N.Y. Aug. 18, 2022) (citations omitted) ("[W]hile a reviewing court may not affirm the Commissioner's decision based on an impermissible post-hoc rationalization, it may affirm where the ALJ's consideration of the relevant factors can be gleaned from the ALJ's decision as a whole."). The Court will not pick and choose when to look to the ALJ's decision as a whole.

ended up in the hospital "with confusion and urinary tract infection and also dry gangrene of the left 2 fingers, index and middle." T. at 330. Since she had been in the hospital in Florida, she "had diarrhea 8 to 10 times." Id. Plaintiff was "planning to go down to Florida" in 2020, but she had been admitted to the hospital for abdominal pain. Id. at 921-22. The ALJ did not explain how these records are inconsistent with the Dr. Valencia-Payne's findings. See id. at 19.

Next, in reviewing the records related to plaintiff's mental health, the ALJ recited only the medical records that indicate that plaintiff's ADHD was controlled with medication, she was not depressed, and she had normal mental health examinations. See T. at 18. He did not once mention the records that plaintiff cites that indicate that she was fidgety, restless, anxious, and squirming during examinations. See Dkt. No. 9 at 18 (citing T. at 522, 557, 643, 677).

Although the ALJ does not need to cite every piece of medical evidence in the record, the ALJ is required to "explain" how he considered an opinion's supportability and consistency beyond a conclusory sentence or two. 20 C.F.R. § 416.920c(b)(2); see also Dezarea W. v. Comm'r of Soc. Sec., No. 6:21-CV-01138 (MAD/TWD), 2023 WL 1960528, at *9 (N.D.N.Y. Feb. 13, 2023) (citations omitted) ("[T]he ALJ did not explain anything; she simply made the conclusory statement that [the] opinion was 'supported by the findings set forth in his report and the testimony that cites to evidence in the record and is consistent with the evidence in the record' without explaining *how* she assessed the opinion in connection with the consistency and supportability factors as required by the new regulations."), report and recommendation adopted, 2023 WL 2552452 (N.D.N.Y. Mar. 17, 2023). The ALJ's two-sentence analysis of Dr. Valencia-

48

Payne's medical opinion is insufficient to meet the articulation requirements of 20 C.F.R. § 416.920c(c)(1)-(2).  <u>See</u> T. at 19.

Nevertheless, a searching review of the record assures the Court that as to plaintiff's mental impairments, the regulations were not traversed.  The ALJ is entitled to reconcile conflicting opinions, and the state agency consultants' reviewed Dr. Valencia-Payne's opinion and concluded that it overstated plaintiff's limitations.  <u>See</u> <u>Ellet v. Comm'r of Soc. Sec.</u>, No. 1:06-CV-1079 (FJS), 2011 WL 1204921, at *9 (N.D.N.Y. Mar. 29, 2011) ("Although the Social Security Regulations do not contemplate that the opinions of a non-examining physician be treated as substantial evidence, these opinions may constitute substantial evidence where they are in turn supported by substantial evidence in the record."); <u>see</u> <u>also</u> T. at 61, 82.  Further, even though the ALJ did not discuss the medical records that plaintiff identifies, those records indicate that plaintiff was fidgety and squirming, but that her medication was working.  <u>See</u> T. at 522, 557, 643, 647, 677, 680.  She was not changing her medication to attempt to control her symptoms, and there is no indication in the record that fidgeting and squirming impacted her ability to do work.  <u>See</u> <u>id.</u> at 522, 557, 643, 647, 677, 680.  Unlike with plaintiff's physical impairments, she was not hospitalized for mental issues, and she was not seeking specialized treatment.  Rather, plaintiff was showing consistent signs of symptom management with Adderall.  <u>See</u> T. at 640, 650, 657, 673, 682.  Accordingly, the ALJ's severity conclusion concerning plaintiff's mental impairments is supported by substantial evidence.  Although this determination does not amount to reversible error, on remand, the ALJ should consider all of plaintiff's impairments in light of the issues identified in this Memorandum-Decision and Order.

## V. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**ORDERED**, that the Commissioner's decision is **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS**; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 14) is **DENIED**, and plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:   June 27, 2023
            Albany, New York

Christian F. Hummel
U.S. Magistrate Judge